# KENNEDY v. HAZELTON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 1081. Submitted December 3, 1888. — Decided December 17, 1888.

Specific performance cannot be decreed of an agreement to convey property which has no existence, or to which the defendant has no title; and if the want of title was known to the plaintiff at the time of beginning the suit, the bill will not be retained for assessment of damages.

One who agrees to assign to another any patents that he may obtain for improvements in certain machines, and who afterwards invents such an improvement, and, with intent to evade his agreement and to defraud the other party, procures a patent for his invention to be obtained upon the application of a third person, and to be issued to him as assignee of that person, and receives profits under it, cannot be compelled in equity to assign the patent or to account for the profits.

THIS was a bill in equity for specific performance, filed November 12, 1887, by a citizen of New York against a citizen of Illinois, and contained the following allegations:

On July 10, 1884, the defendant, in consideration of the sum of $10,000, paid by the plaintiff to him, made an assignment to the plaintiff of an interest of one half ·in two patents previously obtained by the defendant for steam boilers; and also made a written contract, acknowledged before a notary public and recorded in the Patent Office, by which the defendant agreed to assign to the plaintiff any and all patents which the defendant might thereafter obtain from the United States or the Dominion of Canada, for inventions in improvements in steam boilers, and further agreed not to assign such inventions, or the patents obtained therefor, to any other person.

In 1885, the defendant publicly stated that he had invented such an improvement, and explained its general plan and construction; and afterwards combined and confederated with one Goulding to avoid and evade the effect of the contract of July 10, 1884; and for that purpose the defendant caused to be prepared at his expense, but in the name of Goulding, the necessary papers to procure letters patent for this invention; and Goulding, without any consideration received from the defendant therefor, assented to be used in that regard as the alleged inventor of the improvement, and, at the request and by the procurement of the defendant, filed an application under oath for a patent for it, which application was allowed; and Goulding, before the issue of the patent, assigned in writing to the defendant all his interest in the improvement and in the patent therefor; and on December 14, 1886, a patent was issued to the defendant accordingly as assignee of Goulding, a certified copy of which was made part of the bill.

The bill further alleged that the defendant was, and Goulding was not, the original and first inventor of the improvement so patented; that the defendant had engaged in the manufacture and sale of boilers under this patent, and had received and was receiving great benefits therefrom; and that the patent was of value exceeding the sum of $5000, exclusive of interest and costs.

The bill prayed for a decree that the defendant assign this patent to the plaintiff, for an adjudication that the title to it equitably vested in the plaintiff at the date of its issue, for an account of profits received by the defendant from its use, for a preliminary injunction against transferring or incumbering the patent, or manufacturing or selling boilers containing the improvement described therein, and for further relief.

The defendant demurred to the bill : 1st. For want of equity. 2d. For multifariousness, in embracing two separate and distinct causes of action, one to enforce specific performance of a contract, the other for the infringement of a patent. 3d. Because, as appeared by the allegations of the bill, the patent was absolutely void, and no suit could be maintained; either to compel its transfer, or for infringement thereof.

The Circuit Court sustained the demurrer, for the third reason, and dismissed the bill. 33 Fed. Rep. 293. The plaintiff appealed to this court.

*Mr. Clarence A. Seward* for appellants.

[The brief of counsel discussed the whole case. On the point on which the case turns in the opinion, it was in substance as follows:]

Hazelton's agreement was not that he would assign a valid patent, or an invalid patent, but that he would assign " any and all patents I may hereafter obtain from the United States or the Dominion of Canada " for the designated improvement, leaving it to the law thereafter to say whether such patent was or was not maintainable. If such an agreement be, as the authorities show that it is, a valid one and one capable of being enforced in equity, then it ought not to be permitted to Hazelton, when a suit is brought against him to enforce it, to assert that though he did obtain the patent, he was not the inventor, and therefore that the patent is void, and therefore, also, that he ought not to be compelled to assign it; and yet this is precisely the purport of the demurrer.

It is true that the bill alleges that Hazelton was the inventor. The demurrer admits this fact, *Pullman Palace Car Co.*

v. *Missouri*, 115 U. S. 587, 596 ; and therefore Hazelton says that " because I admit the fact by demurrer, the allegation, coupled with the admission, proves that the patent is invalid, and therefore I have a right to retain it and manufacture and sell under it, and cannot be compelled to transfer it to the plaintiff." This ought not to be the law. *Nemo ex suo delicto meliorem suam conditionem facere potest.*

The agreement between the parties having been intelligently made for the purpose of conveying to the plaintiff the sole and exclusive legal title to the designated improvements, ought not to be susceptible of evasion by permitting Hazelton to say, " I have defrauded the Government, and left the plaintiff remediless."

But the patent in question is on its face valid, and in the name of Hazelton is outstanding and in use by him. He can and does use it for the purpose of depriving the plaintiff of the market which he would otherwise find by supplying such market with a boiler which Hazelton says is patented, and for which he exhibits letters patent of the United States, which, on their face, are valid, and which cannot be attacked in any collateral action such as is the present suit.

In the case of *Mahn.* v. *Harwood*, 112 U. S. 354, Mr. Justice Miller said : " The doctrine is well established that a grant by the Government within its lawful authority, evidenced by a patent under its seal and the signature of the Executive, cannot be impeached collaterally. It must be recognized as valid in all courts, when it is introduced as evidence of the right which it confers, and can only be avoided by a direct proceeding by way of *scire facias*, or bill in chancery, to set aside the grant for some of the reasons which made its original issue a wrongful act." p. 365.

This is not a suit to determine anything as to the validity of the patent. It is not a suit to enforce a patent, but to compel the performance of an agreement to convey one. The judicial inquiry therefore is, was there such an agreement and has the defendant the patent ? If this is answered in the affirmative, then equity directs the conveyance and awards the *ad interim* profits. Whether the patent is or is not void-

able upon some statutory ground is a collateral question, pure and simple, and as such it is not properly to be investigated, as it most certainly cannot be effectively decided in a suit to compel the transfer of the patent.

It is believed that the case of *Ambler* v. *Whipple*, 20 Wall. 546, is both a precedent and an authority for this position of the plaintiff.

*Mr. L. L. Bond* and *Mr. E. A. West* for appellee.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The case, as stated in the bill and admitted by the demurrer, is shortly this : The defendant agreed in writing to assign to the plaintiff any patents that he might obtain for improvements in steam boilers. He did invent such an improvement, and, with intent to evade his agreement and to defraud the plaintiff, procured a patent for this invention to be obtained upon the application under oath of a third person as the inventor, and to be issued to him as assignee of that person, and has made profits by manufacturing and selling boilers embodying the improvement so patented. The plaintiff seeks by bill in equity to compel the defendant to assign the patent to him, and to account for the profits received under it.

A court of chancery cannot decree specific performance of an agreement to convey property which has no existence, or to which the defendant has no title. A bill by vendee against vendor for specific performance, which does not show any title in the defendant, is bad on demurrer. And if it appears, by the bill or otherwise, that the want of title (even if caused by the defendant's own act, as by his conveyance to a *bona fide* purchaser) was known to the plaintiff at the time of beginning the suit, the bill will not be retained for assessment of damages, but must be dismissed, and the plaintiff left to his remedy at law. *Columbine* v. *Chichester*, 2 Phillips, 27; *S. C.* 1 Coop. Temp. Cottenham, 295; *Ferguson* v. *Wilson*, L. R. 2 Ch. 77; *Kempshall* v. *Stone*, 5 Johns. Ch. 193; *Morss*

v. *Elmendorf*, 11 Paige, 277; *Milkman* v. *Ordway*, 106 Mass. 232, 256.

· The patent law makes it essential - to the validity of a patent, that it shall be granted on the application, supported by the oath, of the original and first inventor, (or of his executor or administrator,) whether the patent is issued to him or to his assignee. A patent which is not supported by the oath of the inventor, but applied for by one who is not the inventor, is unauthorized by law, and void, and, whether taken out in the name of the applicant or of any assignee of his, confers no rights as against the public. Rev. Stat. §§ 4886, 4888, 4892, 4895, 4896, 4920.

The patent issued by the Commissioner to the defendant as assignee of Goulding is only *prima facie* evidence that Goulding was the inventor of the improvement patented; and the presumption of its validity in this respect is rebutted and overthrown by the distinct allegation in the bill, admitted by the demurrer, that the defendant, and not Goulding, was the inventor. This fact is not brought into the case by any answer or plea of the defendant, but it is asserted by the plaintiff himself as a ground for maintaining his bill.

As the patent, upon the plaintiff's own showing, conferred no title or right upon the defendant, a court of equity will not order him to assign it to the plaintiff — not only because that would be to decree a conveyance of property in which the defendant has, and can confer, no title; but also because its only possible value or use to the plaintiff would be to enable him to impose upon the public by asserting rights under a void patent. *Post* v. *Marsh*, 16 Ch. D. 395; *Oldham* v. *James*, 14 Irish Ch. 81.

The bill cannot be maintained for an account of profits received by the defendant from the use of this patent, because a decree for profits can only proceed upon the ground that the plaintiff is at least the equitable owner of the patent, and there can be neither legal nor equitable ownership of a void patent. The same reason is a sufficient answer to the suggestion of the plaintiff that the bill may be maintained as a bill to remove a cloud upon his title in this patent.

In *Ambler* v. *Whipple*, 20 Wall. 546, cited by the plaintiff, the suit was based upon articles of partnership between Ambler and Whipple, by which it was agreed that all patents obtained by either partner should be owned by both in equal shares. The bill alleged that the two jointly had obtained a patent for a joint invention, and that another patent, afterwards obtained by Whipple upon the application of a third person, embodied the same invention with only a colorable variation. Neither of the patents was in the record, and the questions now presented were not suggested by counsel or considered by the court, but the decree for the plaintiff proceeded upon independent grounds.

The result is, that the present bill cannot be maintained, and that the plaintiff must be left to any remedy that he may have to recover damages in an action at law.

*Decree affirmed.*

The CHIEF JUSTICE and MR. JUSTICE BRADLEY dissented.